IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alice P. Blake, | Civil Action No. 2:10-984-BHH |
| Plaintiff, | |
| vs. | |
| | **O R D E R** |
| Michael J. Astrue, | |
| Commissioner of Social Security, | |
| Defendant. | |

In accordance with the provisions of 28 U.S.C. 636(c); Fed. R. Civ. P. 73; and D.S.C. Local Rule 73.02(B)(1) the parties in this case have consented to have a United States Magistrate Judge conduct all proceedings in this matter. Based upon this consent, the case was referred to the undersigned for final disposition by Order of the Honorable Cameron McGowan Currie, United States District Judge, filed April 23, 2010.

The plaintiff, Alice P. Blake, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 48 years old at the time of his hearing. (R. at 78.) The plaintiff alleges she has been disabled since September 25, 2005, due to shoulder impairments and "blood clots." (R. at 78-86, 122.) She is a high school graduate and earned a certified nursing assistant (CNA) certificate. (R. at 41-42.) She has worked in the past as a quality control inspector and housekeeping supervisor. (R. at 43-44.)

The plaintiff filed applications for DIB and SSI on September 26, 2005. (R. at 78-86.) Her applications were denied in initial and reconsidered determinations. (R. at 54-57.) After a hearing on October 11, 2007, 2007 (R. at 36-53), an Administrative Law Judge (ALJ)

denied plaintiff's claim on December 27, 2007, finding that plaintiff was not disabled because she retained the ability to perform work in the national economy. (R. at 12-20.) On February 10, 2010, the Appeals Council considered new evidence submitted by the plaintiff after the ALJ's decision, but then denied the plaintiff's request for review because it found there was no basis to change the decision, (R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2)    The claimant has not engaged in substantial gainful activity since September 25, 2005, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe impairments: bilateral "frozen" shoulders and status post ovarian vein thrombosis (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary[1] work with no overhead work, climbing, crawling, or exposure to industrial hazards. She can occasionally kneel, crouch and stoop.
>
> (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)    The claimant was born on November 11, 1959 and was 49 years old, which is defined as a younger individual age 45-

---

[1] Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally (2 hours in an 8 -hour day).

> 49 on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8)   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> (9)   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>
> (11)   The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness

3

contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling ("SSR") 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

>  evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to include any reaching limitations in her residual functional capacity; (2) relying on the contradictory opinion of her treating physician that she could perform sedentary work; and (3) relying on the Medical Vocational Guidelines. The Court will consider each objection in turn.

**I.   Reaching and Lifting Limitations**

The plaintiff first argues that the ALJ erred by not including any "reaching" restrictions in the plaintiff's residual functional capacity ("RFC") and by failing to reconcile an apparent discrepancy between lifting restrictions imposed upon the plaintiff by her treating physician and the ALJ's conclusion that she could do sedentary work. (See Pl. Br. at 14-17.) The Court is persuaded by the latter objection.

The ALJ determined that the plaintiff is capable of performing sedentary work in that she can "lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally (2 hours in an 8-hour day)." (R. at 15 n.1.) The ALJ further determined that the plaintiff is precluded from "no overhead work,

climbing, crawling or exposure to industrial hazards" and "can occasionally kneel, crouch and stoop. (R. at 15.)

The defendant contends, contrary to the plaintiff, that the ALJ did include reaching limitations insofar as he found that she should be precluded from performing any "overhead work" with either arm. (See R. at 14.) The plaintiff has not done much more than to summarily claim that the RFC "fails to include any reaching limitations . . . ." (Pl. Brief at 14.) Of course, as cited above, this is simply untrue. (See R. at 15.)

What the plaintiff seems to mean, and more specifically argues in her second objection, is that the limitation to overhead reaching does not go far enough in terms of describing her overall extremity-related limitations. Namely, the plaintiff contends that the ALJ's conclusion that she could perform sedentary work necessarily implies that she has a reaching functionality that is not supported by the evidence in terms of both reaching and lifting.[2] More precisely, sedentary work, by regulatory definition, requires the "ability to lift no more than 10 pounds . . . ." SSR 96-9p. The plaintiff highlights Dr. Michael N. Bohan's express conclusion in his medical source statement that the plaintiff was limited to only "occasionally" lifting "less than 10 pounds." (R. at 410.) In other words, the plaintiff argues, Dr. Bohan's conclusion as to the plaintiff's ability to lift less than 10 pounds is in direct conflict with the regulatory definition that she be able to lift that amount of weight without exception, *see* SSR 96-9p. It is important to note that the ALJ relied heavily on the opinion and treatment notes of Dr. Michael N. Bohan in concluding that the plaintiff could perform sedentary work. (R. at 17, 18.) The ALJ noted that he had "repeatedly declared the claimant capable of sedentary work activity with a restriction from overhead work/lifting . . . ." *Id.* The ALJ also expressly noted that Dr. Bohan repeated the opinion that the plaintiff

---

[2] The Court does not mean to conflate absolutely the exertional activities of reaching and lifting. They are different. The undersigned is merely attempting to make sense of the plaintiff's initial objection, which, on its face, is untenable – that no reaching limitation, whatsoever, was included. It plainly was. (R. at 15.) The Court sees the two issues implicating a broader concern that the RFC is incomplete.

could perform sedentary work with no overhead lifting in his 2007 medical source statement. *Id.*

The defendant responds that narrative portions of the same form and Dr. Bohan's treatment notes suggest that the lifting restriction regarding lifting less than 10 pounds only occasionally should reasonably be interpreted as concerning only the plaintiff's ability to lift overhead (see R. at 19, 411-12 (referencing 'no overhead lifting). The Court agrees with the plaintiff that this is not a reasonable plea. If Dr. Bohan intended a restriction to occasionally lifting less than 10 pounds to refer to only *overhead* lifting, then it would have been inconsistent for him to then specify there should be *no overhead lifting* whatsoever, a limitation repeatedly emphasized and ultimately adopted by the ALJ. Said differently, Dr. Bohan could not have been limiting the plaintiff to occasional lifting of less than ten pounds *over her head* because he had over and over again specifically said she could perform *no* overhead lifting at all (see,e.g., R. at 411). This inconsistency between the definition of sedentary work and the plaintiff's lifting limitations, as found by Dr. Bohan, raises serious doubts about the reliability of the source of the ALJ's conclusion that the plaintiff could perform sedentary work with only a restriction in overhead lifting.

The defendant also counters that sedentary work does not actually require anything more than occasionally lifting of up to 10 pounds. The relevant portion of the Social Security Ruling states that sedentary work requires the ability "to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." SSR 96-9p. The defendant argues that the qualification to occasionally lifting docket files, ledgers, and small tools necessarily modifies the more general lifting limitation of no more than ten pounds at a time. But, the problem is not Dr. Bohan's recommended frequency of lifting but the weight amount. Dr. Bohan specifically found that the plaintiff could lift *less* than 10 pounds occasionally but also specifically failed to check the box that indicated that she could lift ten pounds itself. (R. at 410.) The ruling plainly requires an ability to lift ten pounds, not just amounts of less weight. *See* SSR 96-9p ("If an individual is unable to lift

7

10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded.") Both parties seem to concede that this might create other ambiguities in the opinion of Dr. Bohan's opinion as to the plaintiff's lifting ability and frequency (see Def. Brief at 19, Pl. Reply at 2-3), but it is enough that Dr. Bohan simultaneously, and with apparent incompatibility, recommended both that she could perform sedentary work but that she could not lift ten pounds.

In a last rebuttal, the defendant would note that in the portion of SSR 96-9p, which indicates that if an individual is unable to lift 10 pounds, the unskilled occupational base will be eroded, the Ruling goes further to state that if the ability to lift is only "slightly less than 10 pounds," with no other limitations or restrictions on the ability to perform sedentary work, the occupational base would not be significantly eroded. *Id.* But, there is no evidence one way or the other as to Dr. Bohan's specific meaning; he simply indicated "less than ten pounds." (R. at 410.) The defendant cites other evidence (R. at 373, 386, 399), but the issue at hand is the effectiveness of *Dr. Bohan's* opinion to inform the ALJ's conclusions to the significant extent it appears that it did. There is a note in Dr. Bohan's records that states that the plaintiff should not lift "greater than 10 lbs." (R. at 427.) But, this fact only adds to the confusion, insofar as he specifically and later declined to find that she could lift even 10 pounds. (R. at 410.)

As stated, Dr. Bohan's opinion was not an insignificant factor in the ALJ's decision; rather, it was the centerpiece of it. (See R. at 17, 18 ("[T]he claimant's residual functional capacity is essentially congruent with the opinion of her treating orthopedist, Dr. Bohan.").) For all the reasons cited, therefore, the remand is necessary to clarify the opinion of Dr. Bohan and the ALJ's reliance on it.

**II.    Plaintiff's Credibility**

The plaintiff next complains that the ALJ's credibility finding was not supported by substantial evidence. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a),

provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ determined that the plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 16.) More specifically, the ALJ rationalized that the record "establishes" that the plaintiff's ovarian vein thrombosis improved following surgery "and has remained stable"; that she experienced improvement "relevant to her left shoulder following

9

surgery as evidenced by progress notes form Dr. Bohan"; and that the evidence revealed that the plaintiff "has a history of non-compliance with respect to physical therapy." (R. at 16-17.) The plaintiff challenges each bases. Because of the Court's initial ruling, it would limit its consideration the last two, which are sufficient reasons to include the plaintiff's credibility finding in the remand order. To be precise, and initially, a reconsideration of Dr. Bohan's opinion may have the effect of bolstering the plaintiff's credibility in regards to the improvement of her shoulder strength. The plaintiff had shoulder surgery in October 2006. The plaintiff cites evidence that she continued to have positive impingement sign and pain in her left shoulder, "especially at night when she is trying to sleep," for which Dr. Bohan again gave her an injection and prescribed Vicodin and Ambien. (R. at 488, 489.)

Again, the ALJ relied substantially on the opinion of Dr. Bohan. The ALJ cited Dr. Bohan's report that her right shoulder was stable without significant pain and other evidence that her continued use of it did not appear to result in any damage or increased injury. (R. at 18.) The ALJ also emphasized Dr. Bohan's conclusion that her left shoulder range of motion and strength had improved "nicely" and that she retained 5/5 strength in her left upper extremity. (R. at 17.) Because it is the undersigned's view that either the ALJ misunderstood the extent of Dr. Bohan's opinion as to her ability to lift or that Dr. Bohan offered inconsistent opinions in that respect, which require some clarification, these conclusions now regarding the plaintiff's credibility based on that, either misperceived or contradictory, opinion are necessarily called into question. The Court would conservatively reopen the credibility determination in view of any modifications to the ALJ's view of Dr. Bohan's opinion.

Concerning the plaintiff's credibility, the ALJ also in short fashion, indicated that the plaintiff had a history of non-compliance with respect to shoulder-related physical therapy. (R. at 17.) The plaintiff has put forward evidence that she underwent physicall/occupational therapy between October and November 2005, with only one "no show" recorded. (R. at 302-306, 308-321, 394.) Physical/Occupational Therapy records dated from July to

September 2006, reflect the plaintiff's attendance at 14 sessions, which did not give favorable results. (R. at 455-472). In fact Dr. Bohan was informed that the plaintiff's pain remained unchanged on a scale of "5/10 or greater." (R. at 457.) Additionally, new evidence submitted to the Appeals Council shows that under the care of Dr. Bohan for bilateral shoulder impingement, the plaintiff participated in at least 11 physical therapy sessions between October and December 2007, and February and March 2009, which demonstrate that she did not achieve much relief and experienced some exacerbation of her symptoms during the various modalities. (R. at 594-616.)

To this evidence, the defendant has made essentially no rejoinder. To the extent he defendant has challenged any of the evidence as being submitted after the ALJ's decision, the plaintiff is correct in emphasizing the defendant's own words that when the Appeals Council incorporates the additional evidence into the administrative record, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence" supports the administration's findings. (Def. Br. at 21 (quoting *Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Accordingly, the ALJ's reliance on alleged non-compliance with physical therapy seems substantially unexplained in light of the record detailed by the plaintiff. The entire credibility determination should be revisited.

### III.     Medical Vocational Guidelines ("Grid Rules")

Lastly, the ALJ found at step four that the plaintiff could not return to her past relevant work as a quality control inspector or housekeeping supervisor. (R. at 18.) The issue then became whether there were other jobs existing in the national economy that the plaintiff could perform, considering her age, education, and residual functional capacity. *See, e.g.*, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The ALJ in this case relied on Grid Rules 201.28 and 201.21 of the Medical Vocational Guidelines in making this determination. (R. at 19-20); see 20 C.F.R., pt. 404, subpt. P, app.2. Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through

11

rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. As the ALJ concluded, application of the Grid Rules requires that the claimant be able to "perform all or substantially all of the exertional demands at a given level of exertion . . . ." (R. at 19); SSR 83-11. As discussed, to the extent the plaintiff is found incapable of lifting ten pounds, it may be proper to consider the sedentary occupational base as having been eroded. *See* SSR 96-9p ("If an individual is unable to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded.") Accordingly, whether the ALJ is justified in relying on the Grid Rules at step five will necessarily be revisited based upon his reconsideration of the plaintiff's residual functional capacity.

## **CONCLUSION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED.

s/Bruce Howe Hendricks
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 19, 2011
Greenville, South Carolina